# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

JESSE C. HARRIS,                    )
                                    )
              Petitioner,           )
                                    )
v.                                  )    **Case No. CIV 15-194-RAW-KEW**
                                    )
JIM FARRIS, Warden,                 )
                                    )
              Respondent.           )

## OPINION AND ORDER

This matter is before the Court on Petitioner's petition for a writ of habeas corpus

filed pursuant to 28 U.S.C. § 2254. Petitioner is a pro se prisoner in the custody of the

Oklahoma Department of Corrections who is incarcerated at Jess Dunn Correctional Center

in Taft, Oklahoma. He was convicted and sentenced in McCurtain County District Court

Case No. CF-2011-330 for Domestic Abuse-Assault and Battery (Count 1), Assault and

Battery with a Dangerous Weapon (Count 2), and Possession of a Firearm After Former

Conviction of a Felony (Count 3), and he raises the following grounds for relief:

> I. Improper modification of the Uniform Jury Instruction for Assault and
>    Battery with a Dangerous Weapon.
>
> II. Insufficient evidence to prove the crime of Assault and Battery with a
>     Dangerous Weapon.
>
> III. Failure to include lesser-included offense instruction of Assault and
>      Battery.
>
> IV. Convictions for both Assault and Battery with a Dangerous Weapon
>     and Domestic Abuse arising from a single incident violated the

prohibition against double punishment.

V.   Erroneous Jury instruction for enhanced sentencing range for Assault and Battery with a Dangerous Weapon.

VI.  Trial court's refusal to consider a concurrent sentence was an abuse of discretion.

Respondent concedes that Petitioner has exhausted his state court remedies for the purpose of federal habeas corpus review. The following records have been submitted to the Court for consideration in this matter:

A.   Petitioner's direct appeal brief.

B.   The State's brief in Petitioner's direct appeal.

C.   Summary Opinion affirming Petitioner's Judgment and Sentence. *Harris v. State*, No. F-2012-1015 (Okla. Crim. App. June 2, 2014) (unpublished).

D.   Transcripts

E.   Original Record.

(Dkts. 13-14). Petitioner has filed a reply to Respondent's response. (Dkt. 19).

**Standard of Review**

Under the Anti-Terrorism and Effective Death Penalty Act, federal habeas corpus relief is proper only when the state court adjudication of a claim:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court

2

proceeding.

28 U.S.C. § 2254(d).

**Facts**

Petitioner was convicted of injuring his girlfriend, Michelle Tapley, on July 18, 2011. Ms. Tapley testified that after attending church on the morning of July 17, 2011, she and Petitioner began "fussing with each other" over Petitioner's ex-wife while they were in Petitioner's truck. Petitioner drove Ms. Tapley to her car, and when she got out of his truck, they still were "fussing." She got in her car and told Petitioner she could stand to be with him, but she could not stand to be with him and his ex-wife. Petitioner got angry and started "acting crazy," driving around in circles. He drove toward Ms. Tapley's car and slammed on the brakes, sliding into the side of her car and crushing the side. (Tr. I, 130-32; State's Exhibits 1-2).

Ms. Tapley drove off to her sister Tina Joiner's house, where she stayed from approximately 1:00 p.m. to 8:00 p.m. She hid her car in her sister's garage to prevent Petitioner from finding her, trying to wait it out and let him cool down. When she left her sister's house, she drove through town and stopped at the E-Z Mart, where she bought cigarettes and a six-pack of beer. As she drove by the casino, she decided to stop there to kill more time, so defendant possibly would be asleep when she got home. (Tr. I, 133-35).

After about two or three hours at the casino, Ms. Tapley returned to the house she shared with Petitioner and put up a horse that was out. She then sat in the pasture with the

radio on and drank three beers. She noticed that all the lights in the house were off, so she believed Petitioner was asleep. She then drove her car up to the house and parked it in the garage. When she put her key in the door, however, it did not work, so she knew Petitioner had changed the locks. (Tr. I, 136-36).

Ms. Tapley became angry, because this was her home, too, and Petitioner's changing of the locks happened "all the time." She went to her car, gathered up all the items Petitioner had bought her, including jewelry, and threw it out the car window because she was "aggravated." She then knocked on the door of the house, and Petitioner answered. Ms. Tapley walked inside, past Petitioner, and through the kitchen. She then went into Petitioner's son's room and lay down on the child's bed. Only she and Petitioner were home. (Tr. I, 136-37).

Petitioner entered his son's bedroom, turned on the light, and told Ms. Tapley to get up and leave. She told him she lived there, and she was not leaving. Petitioner then jerked her up by her hair and told her she was going to leave, because "he wasn't going to have a drunk whore laid up in his house." Ms. Tapley testified she was not drunk. (Tr. I, 137).

Petitioner hit Ms. Tapley on her head and in her face with his fists "a bunch of times, over and over and over." She tried to fight back and get away. Although Petitioner told her to leave, he would not actually allow her to leave. The fight moved through the house with Petitioner hitting her. When they went into their bedroom, Petitioner made her lie on the bed, and she bled all over the white comforter. She wanted to leave and attempted to get up and

4

past him, but he would not let her go.  (Tr. I, 137-38).

During the altercation, Ms. Tapley tried to defend herself by throwing things.  She broke the china hutch, a kitchen window, and Petitioner's phone.  She claimed she did this to distract him.  She also bit him on his breast when he was on top of her, and she testified she probably kicked him during the altercation.  (Tr. I, 139, 152).

As Petitioner and Ms. Tapley struggled in the kitchen, the knife block was knocked over, and all the knives fell out. Petitioner took a knife and placed it next to Ms. Tapley's throat.  She was lying face down on the kitchen floor, with the knife under her neck, and he was on top of her.  Petitioner had the knife in his hand and held it underneath her neck.  He did not put any pressure on the knife, but said, "I'm going to kill you."  Ms. Tapley sustained multiple cuts on her throat and neck.  As she pleaded with him to let her go to her father's house, he said, "Quit making me do this, quit making me do this."  (Tr. I, 140-41).

Ms. Tapley was able to escape the house and began running toward the woods.  Petitioner grabbed a two-by-four board on the porch and chased after her with it.  He hit her on her back with the board and knocked her down.  He then hit her with the board over her entire body as she was on the ground.  He also stomped her head and kicked her face. (Tr. 142-43).

Ms. Tapley was able to trip Petitioner, and she started running down the driveway away from him, but she was so weak that she fell.  She put her hands over her head and begged him to stop hitting her.  Petitioner picked her up and said he loved her and was sorry,

and he would not hit her again.  He walked her back to her car and said he would let her go to her father's house.  He told her to get in her car, and she got in the driver's side.  He got in on the passenger's side.  (Tr. I, 143).

Petitioner told Ms. Tapley to drive toward her dad's house, but he would not allow her to go through town by her usual route.  He told her where to drive and made her take a back road.  She was frightened that he was going to take her somewhere and kill her, so she knew she had to do something to escape.  The road he made her drive took them by her aunt and uncle's house.  When she came to their house, she ran the car in the ditch, ran over the mailbox, honked the horn, and screamed for help.  (Tr. I, 143-44).

Petitioner told her to stop screaming, but she continued.  He hit her 15 times, but she did not stop screaming, because she was determined to get help.  Petitioner told her to stop and that she could go into her aunt's house.  She pulled out of the ditch and into her aunt's driveway.  Petitioner held her there for two or three minutes saying he loved her and she "better not call the cops," because he would kill her if she did.  He again asked her why she made him do this to her and then allowed her to go into her aunt's house.  Ms. Tapley ran to her aunt's house, and the aunt called the sheriff's office.  When a deputy arrived about an hour later, he called an ambulance and she was taken to a hospital.  (Tr. I, 145-50).

Petitioner claimed self-defense.  He testified the fight with Ms. Tapley began with an argument after church that he was at his ex-wife's house too long when he went to drop off his child.  He claimed he "barely touched" her car with his truck, and that she caused the

damage when she drove down the side of his bumper. After she left, she called and told him she was going to her sister's house. He stated that the next conversation he had with her occurred about 9:00 p.m., when she called to tell him to turn off her telephone and change the locks on the door, because they were done. He, therefore, went to Walmart and bought a new set of locks and turned off her phone. (Tr. II, 274-79).

Petitioner further testified that he next saw Ms. Tapley at 1:15 the next morning, and she was "whooping the hood" of his pickup with a board. He went outside, grabbed her by the shoulders, and spun her around. She then bit him on his breast, "locked up," and would not let him go. He grabbed her hair and pulled he head back in an unsuccessful attempt to stop the biting. She swung the board at him, hitting his shoulder. She did not let him loose from the biting, until he grabbed the board and hit her across the back with it twice. Petitioner went back inside the house and "told her to get her drunk ass off [his] place" and not to come back. (Tr. II 281-87).

Petitioner further testified that Ms. Tapley then came at him in a dead run, and when they made contact inside the house, both fell down. She picked up his phone, opened it, and snapped it, saying, "There, neither one of them son of a bitches work now." He grabbed her by the hair with both hands to take her back outside, as she was cursing and crying. At no point did she lie down on the bed. She grabbed the doorway between the utility room and the kitchen, causing both of them to fall and knocking the knives down. He testified he never grabbed a knife, held one to her, or threatened her with one. He also denied threatening to

7

kill her. (Tr. II, 287-92).

Petitioner stated that Ms. Tapley ran one of the knives across her neck, stabbed him on his forearm, and in response he hit her on the end of her nose. She then took a larger knife and used it to "poke" him nine times and slice him once. (Tr. II, 292-95).

On cross-examination, Petitioner testified he did not remember threatening Ms. Tapley, and he denied holding a knife up to her. He stated that she stabbed him eight or nine times and sliced him once. He admitted he did not seek any medical treatment for the alleged stab wounds. He first claimed he was not afraid of Ms. Tapley that night and could hold his own with her. He, however, later claimed he was afraid she would hurt him with the knife, although he was physically stronger than Ms. Tapley. (Tr. II, 323-26, 330-33).

Petitioner also admitted it was his voice on a jailhouse telephone call recording in which he told his mother, "I beat the piss out of her, Momma; I beat that son of a bitch until she couldn't move." He, however, testified he did not recall whether he chased her outside and "beat that son of a bitch some more." When asked whether his voice said, "I knocked the shit out of her every time she broke something," he admitted, "I may have said that." (Tr. II 334-35).

**Grounds I and III:  Jury Instructions**

Petitioner alleges in Ground I of the petition that the trial court improperly modified the Uniform Jury Instructions regarding Assault and Battery with a Dangerous Weapon, rendering the instructions inadequate to properly state the law and resulting in an unreliable

verdict. In Ground III Petitioner alleges the trial court committed fundamental error when it did not provide lesser-included offense instructions on Assault and Battery.

Regarding the claim in Ground I of the petition, Petitioner argued on direct appeal that the Information on which Petitioner was tried alleged he "used 'a piece of lumber and/or knife, with intent to do Michelle Tapley bodily harm' in the count charging the crime of assault and battery with a dangerous weapon." (Dkt. 13-1 at 19-20) (citing O.R. 63; Tr. 121). He also complained that under the given definitions, the jury could convict him if it believed he used an instrument "likely to produce injury," rather than one "likely to produce death or great bodily injury" and that the definition of "bodily injury" failed to address the legal definition of "great bodily injury." (Dkt. 13-1 at 21). The uniform instructions provide the following definitions:

> Dangerous Weapon - Any implement likely to produce *death or great bodily harm* in the manner it is used or attempted to be used.

> Great Bodily Injury - (Bone fracture) / (*protracted and obvious disfigurement*) / (protracted loss/impairment of the function of a (body part / organ) (mental faculty)) / (substantial risk of death).

(OUJI-CR 2d 4-28) (emphasis added).

The definitions provided to the jury had two alterations as follow:

> Dangerous weapon - Any piece of lumber and/or knife used in a manner likely to produce *injury or great bodily harm*.

> Bodily Injury - Bone fracture, *obvious disfigurement*.

(O.R. 117).

9

The Oklahoma Court of Criminal Appeals (OCCA) found no error:

**Jury Instructions: Dangerous Weapon and Bodily Injury**
Harris claims the trial court improperly modified the uniform jury instructions on assault and battery with a dangerous weapon. Harris did not object to the instructions or propose any alternatives. He has therefore waived review for all but plain error. *Barnard v. State*, 290 P.3d 759, 764 (Okla. Crim. App. 2012). The trial court judge modified the uniform jury instruction definitions of the terms dangerous weapon and bodily injury to conform to the evidence and the language of the statute under which Harris was charged. The definitions therefore were correct statements of the law, and no relief is warranted. *See Hogan v. State*, 139 P.3d 907, 923 (Okla. Crim. App. 2006) ("[t]he first step in plain error analysis is to determine whether error occurred").

*Harris v. State*, No. F-2012, slip op. at 2-3 (Okla. Crim. App. June 2, 2014) (Dkt. 13-3 at 2-3).

Regarding Ground III of the petition, Petitioner alleged on direct appeal that the trial court erred in failing to instruct the jury *sua sponte* on the related lesser offense of simple assault and battery. The OCCA also denied relief on this claim:

**Jury Instruction: Lesser-Included Offense of Simple Assault**
Reviewing for plain error only, we find the trial court did not err by failing to provide the jury with an instruction on the lesser-included offense of simple assault and battery. *Barnard v. State*, 290 P.3d 759, 764 (Okla. Crim. App. 2012). The test for determining whether a lesser-included offense instruction is warranted "is an objective one--we do not ask a jury to consider a lesser offense if no jury could rationally find both that the lesser offense was committed and that the greater offense was not." *Frederick v. State*, 37 P.3d 908, 934-944 (Okla. Crim. App. 2001). That is, instructions on a lesser-included offense should be given "[o]nly if there is evidence which tends to negate an element of the greater offense." *Gilson v. State*, 8 P.3d 883, 917 (Okla. Crim. App. 2000).

Although Harris argues that the knife and board he used to attack the victim were not dangerous weapons, he points to no evidence negating the

evidence-based inferences that he used those implements to inflict injury and great bodily harm on her, and that he intended to inflict that bodily harm. Nor does Harris point to any evidence tending to negate that he committed an assault and battery upon another person without justifiable or excusable cause.[1] Absent any evidence tending to negate any of these elements, no rational jury could find that the lesser offense of simple assault and battery was committed and that the greater offense of assault and battery with a dangerous weapon was not. Harris was not entitled to a jury instruction on the lesser-included offense of simple assault and battery. Relief for plain error is not warranted. *See Hogan*, 139 P.3d at 923.

*Harris*, slip op. at 4-5 (footnote in original) (Dkt. 13-3 at 4-5).

Respondent alleges that because jury instructions are an issue of state law, and Petitioner has not shown that the instructions as given rendered his trial fundamentally unfair, these two grounds for habeas relief must fail.

In a habeas corpus proceeding attacking a state court judgment based on an erroneous jury instruction, a petitioner has a great burden. *Lujan v. Tansy*, 2 F. 3d 1031, 1035 (10th Cir. 1993), *cert. denied*, 510 U.S. 1120 (1994). A state conviction may only be set aside in a habeas proceeding on the

---

[1] The elements of the offense of assault and battery with a dangerous weapon are:

> First, (an assault)/(a battery)/(an assault and battery);
> Second, upon another person;
> Third, with a sharp/dangerous weapon;
> Fourth, without justifiable or excusable cause;
> Fifth, with intent to do bodily harm.

Instruction No. 4-12, OUJI-CR(2d); Okla. Stat. tit. 21, § 645 (2006). The elements of the offense of simple assault and battery are:

> First, willful;
> Second, unlawful;
> Third, use of force or violence;
> Fourth, upon another person.

Instruction No. 4-26, OUJI-CR(2d); Okla. Stat. tit. 21, §§ 641-642.

basis of erroneous jury instructions when the errors had the effect of rendering the trial so fundamentally unfair as to cause a denial of a fair trial. *Shafer v. Stratton*, 906 F.2d 506, 508 (10th Cir. 1990), *cert. denied*, 498 U.S. 961 (1990). "The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state court's judgment is even greater than the showing required to establish plain error on direct appeal." *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977) (footnote omitted). The question in this proceeding is not whether the instruction is "undesirable, erroneous, or even 'universally condemned,'" but whether the instruction so infected the trial that the resulting conviction violates due process. *Id.* (quoting *Cupp v. Naughten*, 414 U.S. 141, 146 (1973)).

*Maes v. Thomas*, 46 F. 3d 979, 984 (10th Cir.), *cert. denied*, 514 U.S. 1115 (1995).

The fact that a jury instruction is alleged to be incorrect under state law is not a basis for federal habeas relief. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Id.* "Unless the constitution mandates a jury instruction be given, a habeas petitioner must show that, in the context of the entire trial, the error in the instruction was so fundamentally unfair as to deny the petitioner due process." *See Tiger v. Workman*, 445 F.3d 1265, 1267 (10th Cir. 2006) (citing *Middleton v. McNeill*, 541 U.S. 433, 437 (2004)).

The Tenth Circuit Court of Appeals also has held that a state court's failure to give a particular lesser-included instruction in a non-capital case never raises a constitutional question. *Lujan v. Tansay*, 2 F.3d 1031, 1036-37 (10th Cir. 1993). The *Lujan* Court reasoned:

[T]his circuit has agreed with a majority of those circuits addressing the issue and held that a petitioner in a non-capital case is not entitled to habeas relief for the failure to give a lesser included offense instruction "even if in our view

12

there was sufficient evidence to warrant the giving of an instruction on a lesser included offense."

*Id*. t 1036 (citing *Chavez v. Kerby*, 848 F.2d 1101, 1103 (10th Cir. 1988); *Pitts v. Lockhart*, 911 F.2d 109, 112 (8th Cir. 1990)). "Our precedents establish a rule of 'automatic nonreviewability' for claims based on a state court's failure, in a non-capital case, to give a lesser included offense instruction." *Dockins v. Hines*, 374 F.3d 935, 938 (10th Cir. 2004) (quoting *Chavez v. Kerby*, 848 F.2d 1101, 1103 (10th Cir. 1988)).

After careful review, the Court finds Petitioner's claims in Ground I and Ground III of the petition raise state-court claims that are not cognizable in this habeas action.

## Ground II: Sufficiency of the Evidence

In Ground II of the petition, Petitioner alleges the evidence was insufficient to prove the crime of Assault and Battery with a Dangerous Weapon, because the State failed to prove the instruments used were intended to cause "great bodily harm."[2] The OCCA held there was sufficient evidence as follows:

> After reviewing the evidence in the light most favorable to the State, we find that any rational trier of fact could have found beyond a reasonable doubt that Harris committed the crime of assault and battery with a dangerous weapon. *See Spuehler v. State*, 709 P.2d 202, 203-204 (Okla. Crim. App. 1985).

> The assault and battery with a dangerous weapon statute, 21 Okla. Stat., § 645 (2006), requires proof of intent "to do bodily harm," or intent to "injure any person." The statute does not require proof that the weapon used was intended to cause "great bodily injury."

---

[2] The Court notes that Petitioner emphasized the dangerousness of a knife in presenting his defense of self-defense (Tr. II, 331).

The trial evidence showed that the victim's neck bled from where Harris pressed a knife against her throat while threatening to kill her. Photographs taken in the hospital emergency room showed numerous elongate cuts across the victim's throat. Other photographs showed raised red welts on her back in a rectangular pattern suggestive of a wooden plank, the instrument Harris allegedly used to beat the victim. Additionally, as a result of the attack, the victim was unable to raise her arms and was in pain for weeks. Moreover, in the first week after the beating, the victim was in such pain and was so incapacitated that she had to live with her sister who had to feed and bathe her. From this evidence, any rational jury could draw a reasonable inference that the victim was battered with an instrument or instruments intended to cause bodily harm or injury. The evidence was sufficient.

*Harris*, slip op. at 3-4.

"Sufficiency of the evidence can be considered to be a mixed question of law and fact." *Case v. Mondagon*, 887 F. 2d 1388, 1392 (10th Cir. 1989), *cert. denied*, 494 U.S. 1035 (1990). In federal habeas review of a state court conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original).

The OCCA applies the principles of *Jackson* when a defendant challenges the sufficiency of the evidence. *Spuehler*, which was cited by the OCCA in Petitioner's direct appeal, relies on *Jackson* as the standard and authority for claims of sufficiency of the evidence. In addition, the OCCA's factual findings are entitled to a presumption of correctness, unless Petitioner produces clear and convincing evidence to rebut the presumption. 28 U.S.C. § 2254(e)(1).

The Supreme Court repeatedly has emphasized the deference the reviewing court owes to the trier of fact and "the sharply limited nature of constitutional sufficiency review." *Wright v. West*, 505 U.S. 277, 296 (1992) (citing *Jackson*, 443 U.S. at 319). "[A] federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume--even if it does not affirmatively appear in the record--that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Jackson*, 443 U.S. at 326. The Court must "accept the jury's resolution of the evidence as long as it is within the bounds of reason." *Grubbs v. Hannigan*, 982 F.2d 1483, 1487 (10th Cir. 1993) (citing *United States v. Edmondson*, 962 F.2d 1535, 1548 (10th Cir. 1992)). "To be sufficient, the evidence supporting the conviction must be substantial; that is, it must do more than raise a mere suspicion of guilt." *Beachum v. Tansy*, 903 F.2d 1321, 1332 (10th Cir.), *cert. denied*, 498 U.S. 904 (1990) (citing *United States v. Troutman*, 814 F.2d 1428, 1455 (10th Cir. 1987)).

"[W]here a sufficiency challenge was resolved on the merits by the state courts, . . . AEDPA adds an additional degree of deference, and the question becomes whether the OCCA's conclusion that the evidence was sufficient constituted an unreasonable application of the *Jackson* standard." *Diestel v. Hines*, 506 F.3d 1249, 1267 (10th Cir. 2007) (citations and internal quotation marks omitted), *cert. denied*, 553 U.S. 1079 (2008). This standard is called "deference squared." *Hooks v. Workman*, 689 F.3d 1148, 1166 (10th Cir. 2012 (quoting *Young v. Sirmons*, 486 F.3d 655, 666 n.3 (10th Cir. 2007)).

Furthermore, Petitioner cannot challenge the state court's interpretation of state law where an element of the crime is expressed with terms of uncertain meaning. *Anderson-Bey v. Zavaras*, 641 F.3d 445, 448-49 (10th Cir. 2011).

> To assess the sufficiency of the evidence, we first determine the elements of the offense and then examine whether the evidence suffices to establish each element. State law governs what the elements are. *See Valdez v. Bravo*, 373 F.3d 1093, 1097, 1099 (10th Cir. 2004) (evidence was sufficient to find defendant guilty of being an accessory to second-degree murder, because under New Mexico law the intent to kill need not be formed before the defendant arrives at the scene of the crime). Even if we believe that the state courts misinterpreted state law in upholding a defendant's convictions, "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *McGuire*, 502 U.S. at 67-68; *see Rael v. Sullivan*, 918 F.2d 874, 876-77 (10th Cir. 1990) (habeas relief not warranted based on allegedly faulty jury instruction because any error was in state courts' interpretation of state law).

*Anderson-Bey*, 641 F.3d at 448.

After careful review of the record, the Court finds the evidence was sufficient under the standard of *Jackson v. Virginia*. The evidence showed that Petitioner used the board in repeatedly battering Ms. Tapley all over her body, and he used the knife to slice thin, bloody lines across her neck, all while threatening to kill her. The Court, therefore, finds the OCCA's determination that the evidence was sufficient did not constitute an unreasonable application of the *Jackson* standard. *See Diestel*, 506 F.3d at 1267. This ground for habeas relief fails.

**Ground IV: Double Punishment**

Petitioner next alleges his separate convictions for Domestic Abuse-Assault and

Battery and Assault and Battery with a Dangerous Weapon violated the constitutional and statutory prohibitions against double punishment. Respondent asserts that to the extent Petitioner brings this claim under the Double Jeopardy Clause of the Fifth Amendment, the decision of the OCCA holding that no Double Jeopardy violation occurred is neither contrary to, nor an unreasonable application of, federal law. To the extent Petitioner raises his claim under the Oklahoma Constitution or Okla. Stat. tit. 21, § 11 (2011), Respondent alleges Petitioner is raising an issue of state law not generally cognizable on federal habeas review.

On direct appeal, the OCCA found no merit in this claim:

> Again, reviewing only for plain error, we reject Harris' claims that his convictions for assault and battery with a dangerous weapon and domestic abuse assault and battery violate the statutory prohibition against multiple punishment at Okla. Stat. tit. 21, § 11(A), and the constitutional prohibitions against multiple punishment found in the double jeopardy provisions of the Oklahoma and United States Constitutions.[3] *See Head v. State*, 146 P.3d 1141, 1144 (Okla. Crim. App. 2006).

> The charging information alleged Harris committed domestic abuse by assault and battery by striking the victim about her upper body with his fists (Count 1) and committed assault and battery with a dangerous weapon by striking her with a piece of lumber and a knife (Count 2). The evidence at trial showed that the alleged conduct consisted of separate acts where the domestic abuse by assault and battery was committed with fists as weapons, and the assault and battery with a dangerous weapon was committed with a knife and wooden plank. These offenses, while arising during the same incident, were

---

[3] Okla. Stat. tit. 21, § 11(A) provides, in relevant part:

[A]n act or omission which is made punishable in different ways by different provisions of this title may be punished under any such provisions, . . . but in no case can a criminal act or omission be punished under more than one section of law; and an acquittal or conviction and sentence under one section of law, bars the prosecution for the same act or omission under any other section of law.

separate and distinct acts that required dissimilar proof. Section 11 is not implicated. *See Jones v. State*, 128 P.3d 521, 543 (Okla. Crim. App. 2006) ("[s]ection 11 is not violated where offenses arising from the same transaction are separate and distinct and require dissimilar proof").

Because Section 11's prohibition against multiple punishment does not apply in this instance, it is necessary to examine Harris' double jeopardy claims. *Head*, 146 P.3d at 1144. "In cases of double jeopardy claims alleging improper multiple punishment in a single trial, this Court utilizes the same evidence test to determine whether each offense contains an element not contained in the other." *Head*, 146 P.3d 1141, 1146; *see also Logsdon v. States*, 231 P.3d 1156, 1165 (Okla. Crim. App. 2010) (citing *Blockburger v. United States*, 284 U.S. 299, 304 (1932)). Applying this test, Harris' double jeopardy claim fails.

On their face, Okla. Stat. tit. 21, § 645 (2006) (assault and battery with a dangerous weapon) and Okla. Stat. tit. 21, § 644(C) (domestic abuse assault and battery) both require proof of an element not contained in the other. Specifically, Section 645 requires proof that a weapon was used to commit the assault and battery, whereas Section 644(C) does not. Because Section 645 requires proof of an element not contained in Section 644(C), Harris' allegation of multiple punishment error fails under traditional double jeopardy analysis.

Because we find neither statutory nor constitutional error, relief for plain error is not warranted. *See Hogan*, 139 P.3d at 923.

*Harris*, slip op. at 5-7 (footnote in original).

To the extent Petitioner asks this Court to review the OCCA's application of Oklahoma's constitutional and statutory prohibitions against multiple punishments, the Court finds these are issues of state law which are not cognizable in a federal habeas action. *See McGuire*, 502 U.S. at 67-68. In *Tate v. Jones*, No. CIV-11-370-R, 2011 WL 7637185(W.D. Okla. Nov. 29, 2011) (unpublished report and recommendation), *adopted by district court*, 2012 WL 1066136 (W.D. Okla. Mar. 29, 2012) (unpublished), the Court set forth years of

Tenth Circuit case law holding that a challenge to Oklahoma's double punishment statute does not raise an issue for federal habeas review. The *Tate* court held that "[u]nder Oklahoma law, a Section 11 analysis is 'a separate matter, not involving double jeopardy issues.' As Respondent correctly argues, this issue involves purely a matter of state law and, therefore, does not serve as grounds for federal habeas relief." *Id*. at *4 (citations omitted).

A habeas petition alleging multiple punishment double jeopardy is reviewed only to determine whether the state trial court imposed a sentence greater than the legislature intended. *Missouri v. Hunter*, 459 U.S. 359, 368 (1983). Federal courts are "bound by a state court's determination of the legislature's intent." *Cummings v. Evans*, 161 F.3d 610, 615 (10th Cir. 1998) (quoting *Birr v. Shillinger*, 894 F.2d 1160, 1161 (10th Cir. 1990)). Thus, "if the highest state court determines that the legislature intended to punish separate offenses cumulatively, a federal habeas court must defer to that conclusion." *Cummings*, 161 F.3d at 615.

If Section 11 does not apply, the OCCA typically analyzes a defendant's claims under traditional Double Jeopardy analysis, as it did in this case. *Head v. State*, 146 P.3d 1141, 1145 (Okla. Crim. App. 2006). In *Peninger v. State*, 721 P.2d 1338 (Okla. Crim. App. 1986), the OCCA held that it no longer follows the single transaction theory of the law. *Id*. at 1341. Instead, it follows the test set forth in *Blockburger*. *Id.* The Court reasoned that "[t]he applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two

offenses or only one, is whether each requires proof of a fact which the other does not . . . ." *Id.* at 1341-42 (citations omitted). "The fact that the crimes are committed in rapid succession does not negate the fact that separate crimes were committed. To hold otherwise would open the door for persons to commit any number of crimes simultaneously, knowing they could only be punished for one." *Id.* at 1342 (internal citations omitted). In this case, the OCCA correctly cited *Blockburger*, among other cases, in rejecting Petitioner's double jeopardy claim.

Turning to the facts of this case, Count 1, Domestic Abuse-Assault and Battery, Okla. Stat. tit. 21, § 644 (2011), required Petitioner to have a certain relationship with the victim. Count 2, the crime of Assault and Battery with a Dangerous Weapon, Okla. Stat. tit. 21, § 645 (2011), did not require a particular relationship, but did require the use of a dangerous weapon to do bodily harm.

In *Fleming v. Evans*, No. CIV-05-690-C, 2010 WL 1753135 (W.D. Okla. Mar. 30, 2010) (unpublished report and recommendation), *adopted by district court*, 2010 WL 1753133 (W.D. Okla. Apr. 28, 2010), the Western District Court relied on these differing elements to decide a case involving the same crimes as in Petitioner's case. After first finding the petitioner's challenges based on the Oklahoma Constitution and Oklahoma's Section 11 did not justify a federal writ of habeas corpus, the Court further found these two crimes involved different elements for purposes of the Double Jeopardy Clause:

> Multiple differences exist in the elements of the two crimes. For example, assault and battery with a dangerous weapon required the use of a

> [dangerous] weapon, which was not necessary for the crime of assault and battery-domestic abuse. Similarly, the domestic abuse offense required a special relationship between the victim and the defendant, which was not necessary for the offense of assault and battery with a dangerous weapon. Because different elements were involved in the two crimes, they were not greater- and lesser-included offenses and the dual convictions did not run afoul of the Double Jeopardy Clause.

*Fleming*, No. CIV-05-690-C, 2010 WL 1753135, at *2 (citations omitted).

The *Fleming* Court further found the crimes involved separate acts. While Petitioner's crimes may not have been separated by an entire day, as was the case in *Fleming*, the Court finds the victim's injuries in this case were separate. The acts by Petitioner alleged in Count 1 and the acts alleged in Count 2 resulted in separate and distinctly identifiable injuries to the victim. The record shows Petitioner inflicted injuries using two dangerous weapons in Count 2, the board and the knife, which left visible injuries on the victim's back and neck. The victim also suffered black eyes, hair loss, a bleeding nose, and knots over her head which were attributable to Petitioner's use of his bare hands, supporting Count 1. (Tr. I, 150-51). Therefore, the two crimes involved proof of separate and distinct acts, and there was no *Blockburger* violation.

After careful review, the Court finds Section 11 is an issue of state law that is not cognizable on federal habeas review. *See McGuire*, 502 U.S. at 67-68. The Court further finds the OCCA's determination that there was no violation of the Double Jeopardy Clause was not contrary to, or an unreasonable application of, federal law. This claim also fails.

**Ground V:  Jury Instruction on Sentence Enhancement**

Petitioner claims in Ground V that the trial court erred in instructing the jury about the

enhanced sentencing range for Assault and Battery with a Dangerous Weapon, when the

State allegedly failed to give notice in the Information that it was seeking enhancement under

the Habitual Offender Act.  In denying Petitioner's claim on direct appeal, the OCCA held:

> Again reviewing for plain error, we find no merit to Harris' claim that
> the enhanced sentencing range provided for in the jury instructions for Count
> 2 was incorrect.  *Mitchell v. State*, 270 P.3d 160, 175 (Okla. Crim. App. 2011);
> *Grissom v. State*, 253 P.3d 969, 980 (Okla. Crim. App. 2011).
>
> While the prior conviction enhancement page of the second amended
> charging information is no model of clarity, it did list Harris' prior felony
> conviction for domestic abuse assault and battery, albeit in connection with the
> firearms charge as an element of that offense.  There is no reason, however,
> that Harris should have believed that the listing of that conviction solely in
> connection with the firearms count limited its use to that count only.  This is
> especially true in light of *Kinchion v. State*, 81 P.3d 681, 686 (Okla. Crim.
> App. 2003), where this Court found no plain error in the use of a single prior
> conviction as both an element of the offense of being a felon in possession of
> a firearm and as a sentence enhancer for separate counts of robbery and
> conspiracy.  Because a single felony conviction may serve both as an element
> of an offense and a sentence enhancer, Harris was given notice by the charging
> information that his sentence for assault and battery with a dangerous weapon
> was subject to enhancement under Okla. Stat. tit. 21, § 51.1(B) (2011), even
> though the prior conviction was listed only as an element of the firearm
> possession count.  The jury was therefore properly instructed on an enhanced
> range of punishment.  The jury was properly instructed and so relief for plain
> error is not warranted.  *See Hogan*, 139 P.3d at 923 (Okla. Crim. App. 2006).

*Harris*, slip op. at 7-8.

The Court finds that to the extent Petition is challenging the sufficiency of the

Information, sentencing, and jury instructions on sentence enhancement, these are issues of

state law which are not cognizable on federal habeas review. *McGuire*, 502 U.S. at 67-68.

A challenge to the adequacy of an Information under Oklahoma law is a question of state law, and the federal habeas court is "not empowered to correct all errors of state law." *Johnson v. Gibson*, 169 F.3d 1239, 1252 (10th Cir. 1999) (citing *Jackson v. Shanks*, 143 F.3d 1313, 1317 (10th Cir. 1998)), *cert. denied*, 528 U.S. 972 (1999). "[W]e may grant habeas relief to a state prisoner only if state court error deprived him of fundamental rights guaranteed by the Constitution of the United States." *Jackson*, 143 F.3d 1313, 1317 (10th Cir. 1998) (citation and internal quotation omitted). "A charging instrument may violate the Sixth Amendment by failing to provide a defendant with adequate notice of the nature and cause of the accusations filed against him," . . . however "the defects alleged here do not rise to the level of a federal constitutional violation." *Johnson*, 169 F.3d at 1252.

As discussed above, absent a constitutional mandate that a jury instruction be given, a petitioner is required to "show that, in the context of the entire trial, the error in the instruction was so fundamentally unfair as to deny the petitioner due process." *Tiger*, 445 F.3d at 1267. Regarding sentencing claims, the Tenth Circuit has held:

> We afford wide discretion to the state trial court's sentencing decision, and challenges to that decision are not generally constitutionally cognizable, unless it is shown the sentence imposed is outside the statutory limits or unauthorized by law. Generally, our review of a sentence ends once we determine the sentence is within the limitation set by statute.

*Dennis v. Poppel*, 222 F.3d 1245, 1258 (10th Cir. 2002) (citations omitted). *See also Handley v. Page*, 398 F.2d 351, 352 (10th Cir. 1968) (per curiam) (finding "no federal issue

cognizable in federal habeas corpus" presented in claim that sentence was void). *See also Johnson v. Cowley*, 40 F.3d 341, 345 (10th Cir. 1994) (sentence enhancement procedures are a matter of state law); *Shafer v. Stratton*, 906 F.2d 506, 510 (10th Cir. 1990) (where petitioner alleged that the state's interpretation of its own sentencing laws was so egregious that his sentence was excessive and violative of due process, the Tenth Circuit held that the issue was one of state law not cognizable under the federal habeas statute).

On direct appeal, Petitioner cited *Hicks v. Oklahoma*, 447 U.S. 343 (1980) in support of his claims in this ground for habeas relief. (Dkt. 13-1 at 33). *Hicks*, however, concerned an unconstitutional enhancement statute, and Petitioner has failed to establish that the OCCA arrived at a conclusion opposite to that reached in *Hicks*, or that the OCCA decided this case differently than *Hicks* based on materially indistinguishable facts. *See Williams v. Taylor*, 529 U.S. 362, 412 (2000). [4] Because Petitioner has argued no clearly established federal law, "as determined by the Supreme Court of the United States," controlling this particular claim, the OCCA's decision rejecting the claim cannot be contrary to, or an unreasonable application of, such non-existent authority under 28 U.S.C. § 2254(d). Therefore, this Court cannot grant federal habeas relief on the claim, and Ground V of the petition must fail.

---

[4] As used in § 2254(d)(1), the phrase "clearly established Federal law" means "the governing legal principle or principles" stated in "the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)); *see also House v. Hatch*, 527 F.3d 1010, 1015 (10th Cir. 2008) (explaining that "Supreme Court holdings--the exclusive touchstone for clearly established federal law--must be construed narrowly and consist only of something akin to on-point holdings"), *cert. denied*, 555 U.S. 1187 (2009).

**Ground VI: Consecutive Sentences**

In his last ground for relief, Petitioner claims the trial court abused it discretion in sentencing him to consecutive sentences as punishment for exercising his right to a jury trial.

Harris claims the trial judge abused his discretion by refusing to consider running his sentences concurrently. He argues that refusal was retribution for his exercise of his right to a jury trial. This Court reviews a trial court's decision to run sentences consecutively or concurrently for an abuse of discretion. *Neloms v. State*, 274 P.3d 161, 170 (Okla. Crim. App. 2012). A trial court abuses its sentencing discretion when it abdicates its discretion to advance a courthouse policy. *See Flett v. State*, 760 P.2d 205, 206 (Okla. Crim. App. 1988) (court required jail time for everyone convicted of driving while intoxicated); *Gillispie v. State*, 355 P.2d 451, 456 (Okla. Crim. App. 1960) (trial court refused to consider a showing made in support of an application for suspended sentence), *overruled on other grounds by Hill v. State*, 500 P.2d 1075 (Okla. Crim. App. 1972).

In the absence of proof to the contrary, however, this Court must presume a trial judge's decision to impose consecutive sentences was made without passion or prejudice and in compliance with the law. *Riley v. State*, 947 P.2d 530, 535 (Okla. Crim. App. 1997). When an appellant alleges that a trial court, as a matter of policy or unwritten rule, refused to consider concurrent sentences and instead ordered consecutive sentences as a penalty for exercising the right to a jury trial, it is the appellant's burden to prove the allegation. *See Riley*, 947 P.2d at 535 (finding no plain error where appellant presented no proof to reviewing court of alleged "unwritten law" to deny concurrent sentences where defendant asserts right to jury trial).

There is in this case a full record of Appellant's sentencing hearing. That record shows the judge entertained extensive argument on the issue of concurrent versus consecutive sentences. Under these circumstances, the trial judge's bland statement that it was "generally" his policy to impose consecutive sentences in the absence of a request by jurors for concurrent sentences is insufficient to overcome the presumption that the trial judge fully considered his discretionary option to order concurrent sentences. We find no abuse of discretion. *See Goode v. State*, 236 P.3d 671, 679 (Okla. Crim. App. 2010) (defining abuse of discretion as "any unreasonable, unconscionable and arbitrary action taken without proper consideration of the facts and law

pertaining to the matter submitted"); *Williams v. State*, 188 P.3d 208, 217 (Okla. Crim. App. 2008) (same); *Riley*, 947 P.2d 530, 534-535 (same); *Harvey v. State*, 458 P.2d 336, 338 (Okla. Crim. App. 1969) (same).

*Harris*, slip op. at 9-10.

As discussed above, a federal habeas court considers only whether a conviction violates the Constitution, laws, or treaties of the United States. *See McGuire*, 502 U.S. at 67-68. "Generally, our review of a sentence ends once we determine the sentence is within the limitation set by statute." *Dennis*, 222 F.3d at 1258. The Tenth Circuit has held that the question of whether the petitioner was serving concurrent or consecutive sentences was an issue of state law that did not raise a federal issue cognizable for federal habeas review. *Handley*, 398 F.2d at 352. *See also Woodberry v. Hannigan*, No. 01-3166, 37 F. App'x 404, 406 (10th Cir. Apr. 17, 2002) (unpublished) ("It is well-established that courts may constitutionally impose consecutive sentences for completely distinct and separate offenses.") (citing *O'Neil v. Vermont*, 144 U.S. 323, 331 (1892)). Because Ground VI of this petition only raises an issue of state law, Petitioner is not entitled to habeas relief.

**Certificate of Appealability**

The Court further finds Petitioner has failed to make a "substantial showing of the denial of a constitutional right," as required by 28 U.S.C. § 2253(c)(2). In addition, he has not shown "at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether [this] court was correct in its procedural ruling." *Slack v. McDaniel*, 529

U.S. 473, 484 (2000).  Therefore, a certificate of appealability cannot be issued.

**ACCORDINGLY**, Petitioner's petition for a writ of habeas corpus (Dkt. 1) is DENIED, and he is DENIED a certificate of appealability.

**IT IS SO ORDERED** this 25th day of September 2018.

**Dated this 25th day of September, 2018.**

Ronald A. White
United States District Judge
Eastern District of Oklahoma